# HOUSEHOLD GOODS CARRIERS of the State of Arkansas *v.* ARKANSAS TRANSPORTATION COMMISSION

77-192                                                562 S.W. 2d 42

Opinion delivered February 13, 1978
(Division II)
[Rehearing denied March 27, 1978.]

*Harper, Young & Smith,* for appellants.

*Garry L. Brewer,* Commissioner, by: *Martha M. Miller,* for appellee.

FRANK HOLT, Justice. The Arkansas Transportation Commission (ATC) adopted rules and regulations governing the operations of appellants. Ark. Stat. Ann. §§ 73-162, 73-1759 (a) (6). Before doing so and after notice to interested parties, a public hearing was held for the purpose of any party expressing reasons why the rules should or should not be adopted in their proposed form. The appellants appeared and made known their comments and objections. A revised set of rules was then adopted to which appellants also made objections. As a result, the rules were suspended by the ATC, and another hearing was scheduled to consider complaints and any proposed changes offered by appellants. Finally, seven months following the initial hearing and after considering all objections and suggestions, the ATC entered its order adopting "Special Rules and Regulations Governing Household Goods Carriers."

Appellants first contend that the regulations adopted by the ATC and affirmed by the circuit court are arbitrary, capricious, unreasonable and without substantial evidentiary basis. Appellants' argument is that the rules were enacted without any evidentiary basis inasmuch as the ATC did not, at either hearing, present any testimony or other evidence establishing the necessity of the rules and regulations. Only the appellants presented witnesses. In other words, they contend that the ATC had the burden of showing by recorded evidence at the hearings that the proposed rules were necessary. We cannot agree.

In *Clear Creek O. & G. Co.* v. *Ft. S. Spelter Co.*, 161 Ark. 12, 255 S.W. 903 (1923), we recognized:

> [T]he presumption is that the rates fixed by the Commission are reasonable, and the burden of proof is upon the company contesting the rates to show to the contrary.

> \*\*\*\*\*\*

> [T]he establishment of rates is the making of a rule for the future, and is therefore an act legislative in character, whether exercised by the Legislature itself or by some subordinate body created for that purpose by it.

In accord is *Pacific Coast European Conference* v. *United States*, 350 F. 2d 197 (9th Cir. 1965), cert. denied 382 U.S. 958 (1965). There it was said:

> [T]he purpose is to permit the agency to educate itself and not to allow interested parties to choose the issues or narrow the scope of the proceedings. The purpose of the notice is to allow interested parties to make useful comment and not to allow them to assert their 'rights' to insist that the rule take a particular form. The agency, in rule making, can look beyond the particular hearing record since it otherwise would be unable to draw upon its expertise.

In *The Assigned Car Cases*, 274 U.S. 564 (1927), the United States Supreme Court stated that the contention that findings essential to the Commission's order are lacking "rests largely upon a misconception" because "in establishing a rule of general application, [there dealing with coal car distribution] it is not a condition of its validity that there be adduced evidence of its appropriateness in respect to every railroad to which it will be applicable." Further, "where the regulation is within the scope of authority legally delegated, the presumption of the existence of facts justifying its specific exercise attaches alike to statutes, to municipal ordinances, and to orders of administrative bodies." *Pacific States Co.* v. *White*, 296 U.S. 176 (1935). See also 2 Am. Jur. Administrative Law

§ 360. Here it is undisputed that the ATC had authority to promulgate the rules. Therefore, it was not necessary that ATC adduce evidence at these hearings, and appellants have not demonstrated that ATC's rules and regulations were unnecessary on unreasonable.

Appellants next contend that the enactment of Rules 18.5 (h) and (e) exhibits arbitrary action by the ATC because these rules were never discussed or proposed during any of the hearings. These rules deal with the carrier making certificates of insurance available to a shipper. It appears from the record that the subject of these rules was discussed at the hearings. Also it appears appellants themselves initiated the idea that they should "be required to offer insurance for the full value of their shipments."

Appellants also assert that the rules and regulations cancel existing tariffs without notice. We observe that appellants, in their brief, argue that they repeatedly warned the ATC that the proposed rules would be contrary to their existing tariffs. Obviously, the appellants had notice. Further, the existing tariffs were not canceled but merely modified, and the appellants were given forty-five days to republish their tariffs in accordance with the rules.

Neither can we agree with appellants that the reporting requirements outlined in Rule 18.8 (a) are unnecessary and oppressive. They contend this rule is unduly burdensome, because it requires them to submit copies of these records to the ATC. However, the rule only requires that they be made available to ATC upon request. Appellants also claim Rule 18.8 (b), which requires a carrier to provide five additional items of information in its annual report, is oppressive and unnecessary. We see nothing oppressive in thss rule. It also appears that appellants voiced approval and also proposed an identical rule on this matter.

Appellants assert that Rules 18.3 (c) and (f), which relate to the retention of goods by appellants, violate the U.C.C. and discriminate against them. However, Ark. Stat. Ann. § 85-7-103 (Add. 1961) provides:

[T]o the extent that any treaty or statute of the United

> States, regulatory statute of this State or tariff, classification or regulation filed or issued pursuant thereto is applicable, the provisions of this Article are subject thereto.

The commentary to § 85-7-103 states that "the purpose of this provision is to make clear also that regulatory state statutes **** are not affected by the Article and are controlling on the matters which they cover" nor are "regulations filed or issued pursuant to them." Therefore, there is no conflict between the regulations and the U.C.C. as asserted by appellants. Further, Ark. Stat. Ann. § 73-1776 (Repl. 1957) specifically provides that the retention of goods by the carrier "until all tariff rates and charges thereon have been paid," is subject to "such rules and regulations as the Commission may from time to time prescribe to govern the settlement of all such rates and charges, including rules and regulations for weekly or monthly settlement, and to prevent unjust discrimination or undue preference or prejudice . . . . " Appellants have demonstrated no discrimination or undue preference against them by the enactment of these rules.

Neither can we agree with appellants that Rule 18.5 (h), previously discussed, requires the appellants to become insurance agents or to sell insurance. It appears the rule merely assures the shipper the opportunity of purchasing additional insurance if desired. Suffice it to say the rule is similar to appellants' proposed rule which required them to offer insurance to their customers.

As to appellants' contentions that the rules and regulations, particularly 18.3, 18.5 (b), 18.6, and 18.7, are detrimental to the public in that they will result in higher costs for shipping and that they will lead to disharmony between carriers and shippers, suffice it to say that we find their argument speculative, unconvincing, and without cited authority. See *Dixon* v. *State*, 260 Ark. 857, 545 S.W. 2d 606 (1977).

Appellants also insist that the circuit court was without legal authority to propose additional language to the rules upon affirming the order of the ATC, citing Ark. Stat. Ann. § 73-133 (Repl. 1957). Here the circuit court stated that the

rules should be amended to allow the appellants to have a lien for nonpayment of additional charges and suggested that additional language be added to 18.3 (c) and (f) to insure this for the benefit of appellants. The court then affirmed the order so modified. Appellants contend the court must either affirm, reverse or direct the ATC to take certain action. Even so, appellee, in its brief, acquiesced to this modification which was made to meet appellants' objection. Therefore, even if it be said that it is not the court's function to modify the Commission's order, we perceive no prejudicial error. An error without prejudice is no ground for reversal. See *Bridges v. Ark. Motor Carriers*, 256 Ark. 1054, 511 S.W. 2d 651 (1974).

In summary, the appellants have not demonstrated that the appellee's order nor the trial court's affirmance was erroneous in any respect.

Affirmed.

We agree: GEORGE ROSE SMITH and FOGLEMAN and BYRD, JJ.